IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GREENVILLE FUNERAL SUPPLY, LLC,

    Plaintiff,

    v.

ROCKVALE, INC. d/b/a PUERTO RICO
FUNERAL SUPPLY,

    Defendant.

CIVIL NO. 06-2259 (GAG/BJM)

**OPINION AND ORDER**

This case was brought by plaintiff Greenville Funeral Supply, LLC ("Greenville" or "plaintiff") against defendant Rockvale, Inc. d/b/a Puerto Rico Funeral Supply ("Rockvale" or "defendant") for breach of contract, collection of monies, and damages. (Docket No. 1). Rockvale filed a counterclaim against Greenville for violation of Puerto Rico's Law 75 of June 24, 1964, *as amended*, 10 L.P.R.A. § 278, *et seq.* ("Law 75"). (Docket No. 11). Before the court is Greenville's motion for summary judgment both for its own claim and for the counterclaim (Docket No. 23). Rockvale duly opposed (Docket No. 29), and Greenville submitted a reply (Docket No. 37). For the reasons that follow, summary judgment is granted in favor of Greenville.

**FACTUAL BACKGROUND**

For summary judgment purposes, the following material facts, presented in the light most favorable to the non-moving party, are not genuinely in dispute.

Greenville is a company organized and with its principal offices in South Carolina, and is in the business of selling and/or providing finished caskets and related funeral products, raw materials and associated supplies, all of which are generic in nature. Rockvale is a Puerto Rico corporation

Greenville Funeral Supply, LLC v. Rockvale, Inc. d/b/a PR Funeral Supply,                           Page 2
Civil No. 06-2259 (GAG/BJM)
**OPINION AND ORDER**

engaged in owning and operating a warehouse for the distribution and sales of caskets and funeral products. Prior to September 2005, the parties engaged in commercial transactions, apparently without the benefit of a written contract. However, Rockvale received two credit limit increases between January and August 2005. On September 8, 2005, Greenville and Rockvale entered into an *Exclusive Distributorship Agreement* ("Agreement"), whereby Rockvale was appointed exclusive distributor and sales agent for the Puerto Rico and Caribbean market of the products listed in the Agreement's Schedule 1. (Docket No. 23-5).

Section 4.6 of the Agreement states that Rockvale will "[c]omply at all times with Greenville's credit policies as summarized on Schedule 2." Schedule 2, in turn, provides that the credit policy will be "[n]et 60 days from the date of delivery. Credit limit of $100,000.00. Payment will be due if credit limit is exceeded, even if invoice balance is within the payment term of net 60 days."

The Agreement also contains the following integration and exception from waivers clauses:

> Changes. This Agreement may be amended at any time upon mutual consent of Greenville and Distributor.
>
> Containment of the Entire Agreement Herein. This Agreement, and any Schedules, attachments and/or Exhibits attached thereto constitute the entire understanding and agreement between the parties and supersedes all prior and contemporaneous understandings and agreements whether oral or written between the parties relating to the subject matter hereof. No amendment, change or waiver of any provision of this Agreement shall be effective unless in writing referencing this Agreement and signed by authorized officers of the parties thereto.
>
> Waiver, Discharge, ETC. This Agreement may not be released, discharged, abandoned, changed or modified in any manner except in writing and signed by each of the parties hereto. The failure of any party hereto to enforce at any time any of the provisions of this Agreement

Greenville Funeral Supply, LLC v. Rockvale, Inc. d/b/a PR Funeral Supply,     Page 3
Civil No. 06-2259 (GAG/BJM)
**OPINION AND ORDER**

shall in no way be construed to be a waiver of any such provision, nor in any way to affect the validity of this Agreement or any part thereof or the right of any party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach.

Section 7.3 of the Agreement provides that "[n]otwithstanding any above provisions, Greenville may terminate this Agreement at any time upon thirty days written notice for cause; that is for failure of Distributor to comply with any of the terms of this Agreement or for habitual neglect by Distributor to perform its duties."

Greenville and Rockvale conducted several commercial transactions during their business relationship. During the last three months of 2005, Rockvale's orders experienced shipping difficulties and production delays. Shortly after the execution of the Agreement, Rockvale began to exceed its credit limits. Although Rockvale proceeded to remit several payments, the over-credit situation persisted. On April 18, 2006, Greenville notified Rockvale that due to Rockvale's breach of the credit terms, Greenville would stop delivery of pending purchase orders. To this end, Section 6.5 of the Agreement provides that Greenville's duty to deliver ordered product is subject to the right to withhold delivery in the event payments on products previously sold are not current. A few days later, Rockvale tendered a check in the amount of $15,103.70 as payment to be applied to its debt, but stopped payment on the check so that payment was never made. Around the same time, Greenville stopped delivery on several purchase orders, returning and storing the cargo at a cost of $9,494.00.

Thereafter, Rockvale tendered a $5,103.70 check as partial payment but that check was returned for insufficient funds. During May 2006 Rockvale offered to make weekly payments of $5,000 until its outstanding balance was satisfied, but two of the first three payment checks were

Case 3:06-cv-02259-GAG-BJM   Document 42   Filed 06/04/08   Page 4 of 10

Greenville Funeral Supply, LLC v. Rockvale, Inc. d/b/a PR Funeral Supply,                    Page 4
Civil No. 06-2259 (GAG/BJM)
**OPINION AND ORDER**

returned for insufficient funds. Rockvale made no more payments thereafter and currently carries an unpaid balance of $127,319.26 for merchandise that it purchased and received on credit. On or around June 17, 2006, Greenville demanded payment of all outstanding invoices. At that time, all invoices were past due and two-thirds of them were over 90 days past due. When no payment was received, Greenville sent Rockvale a notice of termination on June 28, 2006, with termination effective within 30 days. After terminating the Agreement, Greenville has not engaged in any business in Puerto Rico. Greenville continues to buy, sell and/or distribute identical or indistinguishable products from China through a different importer.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine," the court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed.R.Civ.P. 56(e);

Greenville Funeral Supply, LLC v. Rockvale, Inc. d/b/a PR Funeral Supply,                           Page 5
Civil No. 06-2259 (GAG/BJM)
**OPINION AND ORDER**

Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The parties must rely upon facts that would be admissible into evidence to support or oppose summary judgment. Fed.R.Civ.P. 56(e); Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 14 (1st Cir. 2006). Of course, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party." Leary, 58 F.3d at 751.

## DISCUSSION

Greenville in its complaint seeks to recover $127,319.26 for outstanding invoices on merchandise delivered to Rockvale, and $9,494.00 for costs and expenses Greenville incurred in recalling ordered merchandise as the result of Rockvale's failure to make payment on prior orders. Rockvale does not contest that it has not paid the first amount, or that Greeville incurred the second amount, but argues that these sums should be set off against damages corresponding to Greenville's liability under Law 75 as alleged in the counterclaim. (Docket No. 29, p. 6). Accordingly, Rockvale's defense against plaintiff's collection of monies claim rests entirely on the success or failure of its Law 75 counterclaim.

Greenville rejoins with the present motion for summary judgment, arguing that Rockvale's counterclaim must be dismissed as a matter of law because: (1) Rockvale is not a "dealer" under Law 75 since Law 75's protections do not extend to distributors of generic products; see PPM Chemical Corp.. v. Saskatoon Chemical Ltd., Civ. No. 88-1099, 1990 WL 98404 (D.P.R. June 29, 1990); and (2) even if Law 75 does apply, Rockvale exceeded its credit limit and failed to pay invoices that were

several months overdue, providing "just cause" for the termination of the Agreement. In this case, the court does not need to address the first issue because even assuming, *arguendo,* that Rockvale is a dealer protected by Law 75, the record amply demonstrates just cause for terminating the relationship.

Law 75 was enacted to "remedy the abusive practices of suppliers who arbitrarily eliminated distributors after they had invested in the business and had successfully established a market in Puerto Rico for the supplier's product or service." Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999), *citing* González v. Brown Group, Inc., 628 F.Supp. 436, 439 (D.P.R.1985). To this end, Law 75 offers Puerto Rico distributors protection from arbitrary terminations and impairment of the dealership relationship with the principal. In particular, Law 75 provides that "[n]otwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause." 10 L.P.R.A. § 278a.

"Just cause" is defined as the "[n]on performance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." 10 L.P.R.A. §278(d). Although the determination of just cause depends on the facts of each case, courts consistently have held that regularly paying for goods on time normally is one of the essential obligations of the dealer's contract, and that a dealer's failure to meet this obligation constitutes just cause for termination. PPM Chemical Corp. v. Saskatoon Chemical Ltd., 931 F.2d 138, 140 (1st Cir. 1991); Biomedical Instrument & Equip. Corp. v. Cordis

Greenville Funeral Supply, LLC v. Rockvale, Inc. d/b/a PR Funeral Supply,                                      Page 7
Civil No. 06-2259 (GAG/BJM)
**OPINION AND ORDER**

Corp., 797 F.2d 16, 17 (1st Cir. 1986); Freightliner, LLC v. Puerto Rico Truck Sales, Inc., 399 F.Supp. 2d 57, 62 (D.P.R. 2005); Tatan Mgmt. v. Jacfran Corp., 270 F.Supp. 197, 201 (D.P.R. 2003). Nevertheless, the First Circuit also has noted that the failure to pay on time may not be an essential obligation of the contract in a case that presents the "unusual, abnormal circumstance in which a supplier does not care about late payments." PPM Chemical Corp. of P.R., 931 F.2d at 140; see also Biomedical Instrument, 797 F.2d at 17.

In this case, the Agreement between the parties provides that payment on merchandise was due 60 days from delivery, that the credit limit was $100,000.00, and that payment was due immediately if the credit limit was exceeded. The Agreement expressly provides that Rockvale shall comply at all times with these credit policies. (Docket No. 23-5, ¶4.6). Moreover, the Agreement grants Greenville the right to withhold delivery of ordered merchandise in the event payment for merchandise previously sold was not current. (Docket No. 23-5, ¶6.5)

These terms quite clearly were essential obligations of the dealer's contract between the parties. Not only were they expressly set out in the written Agreement, but a document submitted by Rockvale indicates that Greenville was concerned about the credit limit and the payment term even before the Agreement was signed. Troy Shockley, who handled Rockvale's account for Greenville, stated in an email: "Please contact Rockvale about payment of the oldest outstanding invoice (date around 4-28-05). This invoice is within terms; payment is needed because they have exceeded their credit limit. I am going to ask Danny to begin notifying you when containers hit the PR port. This will be an indicator, that if there are already two outstanding invoices, then you will need to contact them for payment of the oldest invoice. You will need to watch this closely as they have containers that are spaced only about a week apart. Please notify me if we have three outstanding invoices and

you receive notice from Danny that another container has arrived at port. I am not comfortable extending four or more shipments." (Docket No. 29-3, Exh. B). Greenville also cited the credit limit and payment term in its April 2006 notices (Docket No. 23-10, 23-11) and in its notice of termination of the Agreement. (Docket No. 23-16).

The record just as clearly reveals that Rockvale violated these terms. It is undisputed that Rockvale began exceeding its $100,000 credit limit soon after the Agreement was executed in September 2005, and that this situation persisted in the months that followed. Even if, as the record indicates, Greenville experienced shipping delays in late 2005, there is no evidence that this caused Rockvale to continue to exceed its credit limit well into 2006. By April 2006, Greenville understandably became concerned and notified Rockvale that it was stopping delivery on ordered merchandise, consistent with Section 6.5 of the Agreement.[1] Rockvale responded first by tendering a check that it later stopped payment on, and then by tendering other checks that were returned for insufficient funds, events that provided Greenville with ample justification for terminating the Agreement.

Rockvale nevertheless contends that, notwithstanding the letter of the Agreement, the credit terms in fact were "flexible" and were not an essential obligation of the relationship. To this end, Rockvale notes that Greenville granted two credit limit increases in January and August 2005. These

---

[1] Rockvale suggests that Greenville impaired its relationship in violation of Law 75 by withholding ordered product in April 2006. Rockvale overlooks that the Agreement specifically granted Greenville the right to do so. Although Law 75 prohibits acts by the principal "detrimental to the established relationship," 10 L.P.R.A. §278a, the First Circuit has held that "the 'established relationship' between dealer and principal is bounded by the distribution agreement, and therefore the Act only protects against detriments to contractually acquired rights." Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc., 23 F.3d 564, 569 (1st Cir. 1994). Here, the parties recognized in the written Agreement that Greenville reserved the right to withhold delivery of ordered merchandise when payments on previously ordered product were not current, and no Law 75 violation sounds from Greenville's exercise of that right.

increases, however, predated that September 2005 written Agreement; the record contains no evidence that Greenville acceded to any credit increases after the Agreement was executed. And as mentioned above, the document Rockvale submitted to evidence one of the credit increases itself demonstrates that Greenville attached importance to the credit limit and payment term. (See Docket No. 29-3, Exh. B).

Rockvale's reliance on Biomedical is similarly misplaced. In Biomedical, the First Circuit held that the plaintiff had raised a triable issue of fact as to whether or not non-payment had been used as a subterfuge for termination since there was evidence that the true reason for termination was not late payments but the principal's perception that the dealer was not performing well. 797 F.2d at 17. Here, the record does not suggest any motivation for terminating the Agreement other than the fact that Rockavale exceeded its credit limit and tendered a series of bad checks in response to Greenville's efforts to collect on overdue invoices. Nor does it support Rockvale's argument that Greenville was unconcerned about being paid on time simply because it did not take drastic action the first time Rockvale's credit exceeded $100,000. See Waterproofing Systems, Inc. v. Hydro-Stop, Inc., 440 F.3d 24, 30 (1st Cir. 2006) ("It is contrary to the principle enshrined in Law 75 to require that suppliers terminate distribution agreements immediately upon distributors' failure to pay timely, or risk being forever banned from so doing."). To the contrary, the importance of the credit limit and the term of payment was enshrined in the written Agreement, and was reflected in Greenville's correspondence both before and after the Agreement was executed, and Greenville justifiably was concerned when Rockvale persistently exceeded the credit limit, failed to comply with a payment plan, and issued a series of bad checks in response to demands for payment. In short, no reasonable

Case 3:06-cv-02259-GAG-BJM   Document 42   Filed 06/04/08   Page 10 of 10

Greenville Funeral Supply, LLC v. Rockvale, Inc. d/b/a PR Funeral Supply,   Page 10
Civil No. 06-2259 (GAG/BJM)
**OPINION AND ORDER**

jury could find that the credit limit and payment term were not essential obligations, or that Greenville was not motivated to terminate the Agreement by Rockvale's violation of those terms. Greenville's motion for summary judgment as to the counterclaim is therefore granted.

As to Greenville's claim for breach of contract and collection of money, Rockvale concedes that it has not paid $127,319.26 for merchandise that it received from Greenville. Rockvale also concedes that Greenville incurred $9,494.00 in shipping and storage costs in connection with ordered merchandise that Greenville recalled.[2] In defense to the collection claim, Rockvale asserts that the monies it owes are subject to set-off against the damages due under Law 75. Since Rockvale's counterclaim has now been disposed of, it follows that summary judgment must also be granted as to Greenville's claim for breach of contract and collection of money. Accordingly, the court grants summary judgment in favor of Greenville in the amount of $127,319.26 for outstanding invoices, and $9,494.00 for costs incurred in the shipping and storage of merchandise.

## CONCLUSION

In view of the foregoing, Greenville's motion for summary judgment is **GRANTED**. Judgement shall be issued: (1) ordering Rockvale to pay Greenville 136,813.26; and (2) dismissing the counterclaim with prejudice.

In San Juan, Puerto Rico, this 4th day of June, 2008.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge

---

[2] Although Rockvale argues that plaintiff had "other, more efficient, alternatives available to mitigate" the costs it incurred (Docket No. 29-2, ¶23), Rockvale has not submitted evidence of such alternatives.